## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **JENNIE McCRACKEN, ET AL.,** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:11CV00073 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **THE BLACK DIAMOND** | ) | By: James P. Jones |
| **COMPANY,** | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

*Mary Varson Cromer, Appalachian Citizens' Law Center, Whitesburg, Kentucky, for Plaintiffs; Thomas R. Scott, Jr., Street Law Firm, LLP, Grundy, Virginia, for Defendant.*

The plaintiffs filed this case pursuant to the "citizens suit" provisions of the Surface Mining Control and Reclamation Act of 1977 ("SMCRA"). They allege that the defendant coal mining company has diminished and contaminated their water supplies and failed to provide them with an adequate and permanent replacement, in violation of SMCRA as well as state law. The plaintiffs seek a money judgment for damages sufficient to enable them to fund replacement of the water supplies destroyed by the defendant's mining operation. I find that the allegations set forth in the plaintiffs' Amended Complaint are sufficient to survive the defendant's Motion to Dismiss.

I

The facts, as alleged in the Amended Complaint, and which are accepted for the purposes of the present motion, are as follows.

The plaintiffs, Jennie McCracken and Russell Daugherty, are adjacent property owners in Hurley, Virginia, in Buchanan County.   Until recently, McCracken and Daugherty relied exclusively on groundwater wells on their properties to provide their necessary domestic water supplies.   These wells supplied both households with an adequate quantity of clear, clean water.

The defendant, The Black Diamond Company ("Black Diamond"), operates an underground coal mine in Buchanan County, pursuant to a surface mining permit.  As part of its permit, Black Diamond is required to provide temporary and permanent water supplies to replace any supplies that are contaminated, diminished, or interrupted as a result of its mining operation.

In August 2006, Black Diamond became authorized to extend its surface mining operation into the Mill Creek area, which lies in the valley below McCracken's and Daugherty's wells.   Black Diamond mined the area directly underneath Daugherty's property, approximately 500 to 1000 feet from the two wells.   Shortly afterwards, McCracken and Daughtery began experiencing significant problems with the quantity and quality of water provided by the wells.

- 2 -

McCracken and Daugherty complained to the Virginia Division of Mined Land Reclamation ("DMLR") concerning the problems with their water supplies. In the spring of 2007, Black Diamond drilled a new well for the Daughtery household; however, the water provided by the new well was red in color and of very poor quality. DMLR conducted an investigation and concluded that McCracken's and Daughtery's water diminution problems were related to Black Diamond's mining operation. DMLR also determined that Daughtery's new replacement well was unsuitable for domestic use without extensive treatment. Consequently, in May of 2008, DMLR issued two Water Replacement Orders directing Black Diamond to permanently replace McCracken's and Daugherty's water supplies within twenty-one days. The new water supplies were to be of equivalent quantity and quality to that existing before mining.

Subsequently, Black Diamond drilled a new well for the McCracken household and installed sand filtration systems for both McCracken's and Daugherty's new wells. However, even after filtration, the water provided was unfit for consumption primarily because of high levels of iron and other metals, as well as coliform contamination. On August 17, 2010, DMLR advised Black Diamond that the new wells and post-filtered water supplies did not meet the Virginia Department of Health water quality standards. DMLR ordered Black

- 3 -

Diamond to provide temporary water replacements of potable/drinking water until such time that the permanent post-treatment supplies met the Virginia Health Department water quality standards.

Since then, Black Diamond has been supplying Daugherty and McCracken with potable bottled water and trucked-in water as a temporary replacement arrangement.   Permanent water supplies have not been established for the McCracken or Daugherty households.

The plaintiffs allege that, because Black Diamond has not provided them with adequate, permanent replacements of their water supplies as ordered by DMLR, Black Diamond is in violation of SMCRA as well as Virginia law.  They y seek a money judgment for damages to compensate them for the costs arising from the loss and contamination of their water wells, and to enable them to fund permanent replacements of the water supplies destroyed by Black Diamond's mining operation.

Black Diamond has moved to dismiss the plaintiffs' causes of action on various different theories.  The defendant claims that the court lacks subject matter jurisdiction or, in the alternative, that the plaintiffs have failed to state claims for which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(1), 12(b)(6).  Additionally, the defendant has moved to dismiss for failure to join an indispensable party under

- 4 -

Federal Rule of Civil Procedure 12(b)(7).  The Motion to Dismiss has been fully briefed and is ripe for decision.

## II

A. LACK OF SUBJECT MATTER JURISDICTION.

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure raises the fundamental question of whether the court is competent to hear and adjudicate the claims brought before it.  Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways — facial attacks and factual attacks.  *See Thigpen v. United States*, 800 F.2d 393, 401 n. 15 (4th Cir. 1986). In the present case, the defendant mounts a facial challenge, arguing that the Amended Complaint "simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). In analyzing a facial challenge, the court must proceed as it would on a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and accept the allegations in the Amended Complaint as true.  *See id*.

The plaintiffs filed this action pursuant to § 520(f) of SMCRA.  Section 520(f) provides:

> Any person who is injured in his person or property through the violation by any operator of any rule, regulation, order, or permit

> issued pursuant to [SMCRA] may bring an action for damages . . .
> only in the judicial district in which the surface coal mining operation
> complained of is located.

30 U.S.C.A. § 1270(f) (West 2007).  This provision creates a federal cause of action for the recovery of damages resulting from the violation of "any rule, regulation, order, or permit issued pursuant to [SMCRA]."  *Id.*  Black Diamond's first argument for dismissal centers on whether the statutory phrase "issued pursuant to [SMCRA]," includes state-issued orders and regulations that comprise a federally approved state surface mining program.  More precisely, the issue is whether the Virginia orders and regulations allegedly violated by Black Diamond were issued "pursuant to" SMCRA, such that the court has subject matter jurisdiction over the Amended Complaint under § 520(f).  Black Diamond contends that the Virginia orders were not issued pursuant to SMCRA, and that Virginia courts have exclusive jurisdiction over the plaintiffs' claims.

This argument has no merit.  The Fourth Circuit has plainly stated that individual plaintiffs may maintain actions in federal court under § 520(f) of SMCRA to recover money damages from coal operators as a result of a violation of any state rule, regulation, permit, or order included in an approved state regulatory program.  *See Molinary v. Powell Mountain Coal Co., Inc.*, 125 F.3d 231, 237 (4th Cir. 1997) ("Because Congress has not specifically assigned

jurisdiction over § 520(f) suits elsewhere, we conclude the district court possessed subject matter jurisdiction pursuant to 28 U.S.C. § 1331.").   Although Black Diamond cites the Fourth Circuit's subsequent decision in *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275 (4th Cir. 2001), for its emphasis on the exclusivity of state regulation, the *Bragg* court reiterated the conclusion in *Molinary* that SMCRA gives federal courts subject matter jurisdiction "over at least some sorts of claims." *See Bragg*, 248 F.3d at 299.   The question is not one of jurisdiction, but of the merits of the claim.  *Id.* at 299-300.

Black Diamond next argues that this court lacks jurisdiction because DMLR has already taken some enforcement action in response to the plaintiffs' requests for relief, triggering SMCRA's diligent prosecution bar.   In other words, Black Diamond asserts that the plaintiffs chose to seek enforcement through DMLR and, having done so, must now be barred from litigating before this court.

Title 30 U.S.C.A. § 1270(b)(1)(B) (West 2007) provides that "no [citizen] action may be commenced . . . if the [federal government] or the State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the provisions of [SMCRA], or any rule, regulation, order, or permit issued pursuant to [SMCRA] . . . ."   While it is true that DMLR has issued two Water Replacement Orders in connection with

plaintiffs' requests for relief, the statutory language is clear — enforcement actions of regulatory authorities can only preclude citizen suits against coal operators if the state regulatory agency itself has brought a civil action against the operator *in a court*.   Because DMLR has not commenced any civil action against Black Diamond, the diligent prosecution bar is not implicated.

Similarly, Black Diamond contends that, as a result of the Water Replacement Orders issued by DMLR, the plaintiffs' claims are barred by the doctrine of res judicata.   To invoke the doctrine of res judicata, a party must establish a final judgment on the merits in a prior suit resolving claims by the same parties or their privies, and a subsequent suit based on the same cause of action. *See Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009).   While the doctrine of res judicata was developed in the context of judicial proceedings, it may be applied to administrative actions as well.   *See United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 421-22 (1966).   For res judicata to attach to determinations of administrative agencies, the prior "decision must be rendered pursuant to the agency's adjudicatory authority and the procedures employed by the agency must be substantially similar to those used in a court of law." *Liller v. W. Va. Human Rights Comm'n*, 376 S.E.2d 639, 646 (W. Va. 1988). Issues and procedures are not substantially similar if the second action involves the

application of different legal standards or substantially different procedural rules, even though the factual setting of both actions may be the same.  *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 n.15 (1979).

Res judicata is clearly inapplicable here.  First, there has been no formal adjudication between the parties in a court of law.  Second, the procedures utilized by DMLR were not substantially similar to those employed in judicial proceedings. For instance, there is no indication that the parties were represented by lawyers, or that DMLR's grievance process provided for any of the discovery mechanisms available under the Federal Rules of Civil Procedure.  DMLR simply issued Water Replacement Orders with no subsequent proceedings in administrative courts or elsewhere.[1]  Where there is no evidence of any testimony, subpoenaed evidence, or opportunity to test any contention by confrontation, the doctrine of administrative res judicata has no application.  *See Delamater v. Schweiker*, 721 F.2d 50, 53-54 (2d Cir. 1983).

Finally, Black Diamond argues that the plaintiffs' claims in Count One and Count Three must be dismissed because they are not founded upon current violations of its permit or any ongoing order issued by DMLR.  Specifically, Black

---

[1] Black Diamond also argues that the plaintiffs are barred from litigating in this court because they failed to exhaust all administrative remedies.  However, SMCRA does not require plaintiffs to pursue administrative remedies before seeking relief in court.  *See* 30 U.S.C.A. § 1276(e) (West 2007); *see also Ginn v. Consolidation Coal Co.*, 437 N.E.2d 793, 796 (Ill. App. Ct. 1982).

Diamond contends that DMLR's May 2008 Water Replacement Orders have been dismissed due to compliance, and that DMLR's August 2010 Water Replacement Order currently controls Black Diamond's responsibility for the plaintiffs' water supplies.  Since the plaintiffs do not allege any violations of the August 2010 Order, Black Diamond argues that their claims must be dismissed.

I find this argument to be unpersuasive.  As discussed, the May 2008 Water Replacement Orders directed Black Diamond to permanently replace the plaintiffs' water supplies within twenty-one days.  The new water supplies were to be of equivalent quantity and quality as the plaintiffs' pre-mining supplies. Additionally, Black Diamond's surface mining permit requires Black Diamond to permanently replace any water supply that is contaminated, diminished, or interrupted by its mining operation.  Contrary to Black Diamond's assertion, the plaintiffs do not admit that Black Diamond complied with the May 2008 Water Replacement Orders nor its permit.  While the plaintiffs concede that Black Diamond drilled new wells and installed sand filtration systems, they allege that the water replacements provided are of insufficient quality.  Thus, taking the plaintiffs' allegations regarding Black Diamond's requirements and its failure to provide adequate, permanent replacements as true, the plaintiffs have stated valid claims upon which relief could be granted.

B. FAILURE TO JOIN AN INDISPENSABLE PARTY.

Black Diamond also argues that the plaintiffs' claims should be dismissed for failure to join an indispensable party under Rule 19. *See* Fed. R. Civ. P. 12(b)(7). In ruling on a 12(b)(7) motion, a court must accept as true the allegations of the complaint. *See Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 479 n.2 (7th Cir. 2001). In addition, the burden rests on the moving party to show that the party who was not joined is needed for a just adjudication. *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005).

Whether a party is indispensable requires a two-step inquiry. *See* Fed. R. Civ. P. 19. First, it must be determined whether the party is "necessary" pursuant to Rule 19(a). *See Owens-Ill., Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999). Under this rule, a party is "necessary" if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  Second, if a necessary party cannot be joined, the court must then decide whether that party is "indispensable" under Rule 19(b).  If the party is "indispensable," the court must dismiss the action.  In determining whether a party is "indispensable," the court weighs the following factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
>> (A) protective provisions in the judgment;
>>
>> (B) shaping the relief; or
>>
>> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

Determinations as to necessity and indispensability are left to the sound discretion of the trial court.  *See Coastal Modular Corp. v. Laminators, Inc.*, 635 F.2d 1102, 1108 (4th Cir. 1980).  Dismissal of a case for nonjoinder is a drastic remedy and should be employed sparingly.  *See Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 918 (4th Cir. 1999).

In this case, Black Diamond argues that DMLR is a necessary party because it has already issued orders with respect to Black Diamond's violations and permitting the suit to continue in both the state administrative arena and federal court would likely subject the parties to conflicting legal obligations.

I disagree.   As a general rule, regulatory agencies are not considered necessary parties in citizens suit enforcement actions.  *See, e.g., Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc.*, 299 F.3d 1007, 1014 (9th Cir. 2002) ("We fully agree with other federal circuits . . . that federal and state agencies administering federal environmental laws are not necessary parties in citizen suits to enforce the federal environmental laws."); *Friends of the Earth v. Carey*, 535 F.2d 165, 173 (2d Cir. 1976).  To hold otherwise would negate one of the primary purposes of environmental citizens suit provisions — to provide a means by which citizens can seek enforcement or relief where the regulatory authority has failed to properly enforce the law.  Moreover, Congress expressly gave regulatory authorities the power to intervene as a matter of right in any SMCRA citizens suit.  *See* 30 U.S.C.A. § 1270(c)(2) (West 2007).  The fact that Congress chose to allow state regulatory authorities to elect whether to become involved in SMCRA citizens suits, rather than to create a *requirement* that they

participate as parties, shows that Congress did not regard state regulatory authorities as necessary parties to such actions.

Furthermore, DMLR is not so situated that resolution by this court would impair or impede its interest or cause Black Diamond to incur inconsistent legal obligations.  As Black Diamond acknowledges, DMLR's only outstanding interest is its August 2010 Order requiring Black Diamond to provide the plaintiffs with temporary potable/drinking water *until a permanent solution can be obtained*.  If the plaintiffs' remedy is granted, the plaintiffs will obtain adequate, permanent replacement water supplies and Black Diamond will no longer be required to provide potable water under the terms of DMLR's Order.  Thus, a successful disposition will end Black Diamond's current obligation to provide the plaintiffs with water without impairing or impeding the effectiveness of DMLR's Order.  Because DMLR does not qualify as a "necessary" party under Rule 19(a)(1), further indispensability analysis is unwarranted.

III

For these reasons, the defendant's Motion to Dismiss (ECF No. 9) is DENIED.[2]

---

[2] The defendant also filed an Amended Motion to Dismiss (ECF No. 14).  This

It is so **ORDERED**.

ENTER:   May 6, 2012

/s/  James P. Jones
United States District Judge

---

motion additionally asserts that there is no diversity subject-matter jurisdiction.  Because
I find SMCRA to be the basis of the court's jurisdiction, there is no reason to consider
this argument, and the amended motion is also denied.